IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNIVERSAL COOPERATIVES INC.;
and UNIVERSAL CROP PROTECTION
ALLIANCE LLC                                                                PLAINTIFFS

v.                          No. 4:11-cv-304-DPM

AAC FLYING SERVICE INC.;
CARTILLAR ENTERPRISES INC.;
CRIDER'S FLYING SERVICE; FOLDEN
AVIATION INC.; FORREST FLYING
SERVICE INC.; JOHNSON FLYING
SERVICE INC.; KEN GRUBBS AERO
INC.; MILES FLYING SERVICE INC.;
SCOTT FLYING SERVICE INC.; and
WHIRLWIND AVIATION INC.                                                     DEFENDANTS

ORDER

Universal Cooperatives, Inc., and its wholly owned subsidiary, Universal Crop Protection Alliance, LLC, seek (among other things) to recoup more than $1.5 million in attorney's fees incurred in defending related litigation about drifting 2,4-D that damaged cotton. The subsidiary formulates and sells this herbicide under the brand name "2,4-D Amine" to the parent's member cooperatives. They, in turn, sell it to distributors and retailers. This herbicide can be applied by aerial applicators — crop dusters.

The ten defendants here are, the Universal entities say, the crop dusters who applied the 2,4-D that ended up damaging the cotton.

**1. Some Procedural History.** The related litigation began in this Court. Approximately eighty cotton farmers and related entities sued both Universal entities and other 2,4-D manufacturers and distributors, alleging that herbicide applied to rice by air had drifted and damaged their cotton. No crop duster was sued. The farmers' claims were mostly about the 2,4-D and how it was sold—product-liability claims and warranty claims. My Sister Wright eventually dismissed that case for want of subject matter jurisdiction when some new distributor defendants destroyed diversity. *Burns v. Universal Crop Protection Alliance*, No. 4:07-cv-535-SWW, *Document No. 243*.

Meanwhile, a parallel state action moved forward. About seventy of the same cotton farmers had filed the second suit in the Circuit Court of Clay County, Arkansas. Both Universal entities were among the twenty defendants. Again, no crop duster was sued. Because of the complexity of the issues, and the number of parties, the Circuit Court decided to try the claims of eight plaintiffs and put the rest on hold. The Honorable David N. Laser was handling what was essentially an MDL proceeding all in one case.

The bellwether trial took more than five weeks. The Universal entities, among other defenses, tried the empty chair: they said the crop dusters were responsible for the damaged cotton. For their part, some of the crop dusters testified for the cotton farmers. The jury returned a verdict for all the defendants, including the Universal entities. An appeal is pending in the Arkansas Court of Appeals. *Ellis v. Universal Crop Protection Alliance LLC*, No. CA11-236.

**2. The Facts and the Claims Here.** The crop dusters move to dismiss the Universal entities' attorney's-fee complaint for failure to state claims. FED. R. CIV. P. 12(b)(6). The Court has benefitted from the parties' briefs, supplemental briefs, and oral argument. In weighing the motion, the Court accepts as true all the facts alleged by the Universal entities and gives them all reasonable inferences from those facts. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011).

Here is what happened.

- In 2006, the crop dusters applied 2,4-D Amine to rice in Northeast Arkansas.

- The 2006 version of the 2,4-D Amine label* did not list rice as an approved target crop.

- The crop dusters acted contrary to the label's instructions, which violated federal and state law.

- The crop dusters were regulated by the Arkansas State Plant Board.

- The crop dusters had been trained and licensed in the safe use of herbicides like 2,4-D Amine.

- Various crop dusters violated applicable state regulations in several ways:

    - they did not follow the 2,4-D Amine label about approved crops;

    - they applied the herbicide when the wind velocity exceeded the allowed velocity;

    - they applied the herbicide during temperature inversions;

    - they applied the herbicide when the temperature was too high; and

    - they did not keep accurate records of weather and work.

---

*An intriguing fact beyond the record, which the Court has not relied upon, is that 2,4-D is routinely used on rice and other small grains. *E.g.*, 2,4-D Amine Weed Killer Specimen Label, http://www.ucpallc.com/PDFs/Herbicides/2,4D_Amine_Label.pdf (last visited 24 March 2012).

-4-

- The State Plant Board and the University of Arkansas Extension Service investigated complaints of off-target spray drift during the summer of 2006.

- The State authorities concluded that the drifting 2,4-D was most likely caused by applying the herbicide during temperature inversions, contrary to label instructions, and contrary to various regulations.

- The crop dusters' acts and omissions caused the cotton farmers' damages, led to the Universal entities being sued twice, and resulted in their incurring substantial attorney's fees in defending themselves.

The complaint comes in ten counts. But there are only five claims; each is asserted twice, once by Universal Cooperatives, Inc., and then again by Universal Crop Protection Alliance, LLC. The distinction between these entities does not strike the Court as a critical one in analyzing the legal soundness of each cause of action. Going forward, the Court will speak of Universal, meaning both entities. Universal seeks to recover its attorney's fees based on (1) the crop dusters' negligence, (2) their violation of the Arkansas Deceptive Trade Practices Act, (3) their obligation of implied indemnity, (4) the RESTATEMENT (SECOND) OF TORTS § 914(2), and (5) the third-party-litigation exception to the American Rule about attorney's fees. The parties

agree that this Court must apply Arkansas law in this diversity case. *Webber v. Sobba*, 322 F.3d 1032, 1035 (8th Cir. 2003).

**3. Negligence?** Universal's negligence counts fail to state a claim because the crop dusters had no duty to the herbicide formulator. Duty, breach, proximate cause, and damage. Those are the familiar elements of a negligence claim under Arkansas law. *E.g.*, *Branscumb v. Freeman*, 360 Ark. 171, 179, 200 S.W.3d 411, 416 (2004); *see generally* HOWARD W. BRILL, ARKANSAS LAW OF DAMAGES § 33:1 (5th ed. 2004). Negligence is a relational concept, as are its constituent parts, duty and causation. *Marlar v. Daniel*, 368 Ark. 505, 508–09, 247 S.W.3d 473, 476 (2007); *Shannon v. Wilson*, 329 Ark. 143, 158, 947 S.W.2d 349, 356–57 (1997); *Hill v. Wilson*, 216 Ark. 179, 183, 224 S.W.2d 797, 800 (1949) (Leflar, J.). "The concept of actionable negligence is relational because an act is never negligent except in reference to, or toward, some person or legally protected interest." *Hill*, 216 Ark. at 183, 224 S.W.2d at 800. And "[t]he question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury." *Marlar*, 368 Ark. at 508, 247 S.W.3d at 476.

The crop dusters' relationship to Universal was at least two arm's lengths away. They were users of 2, 4-D Amine, the product having passed through others in the supply line. The distant relations between the parties imposed no legal obligations on the crop dusters back up the line to the formulator. *Marlar*, 368 Ark. at 508–09, 247 S.W.3d at 476.

Did the crop dusters have a duty to their rice farmer customers to use ordinary care in applying the chemical? Of course. They had the same duty to those farmers' neighbors and even passers by. The crop dusters' many violations of state and federal law are evidence of their negligence. *Rogers v. Stillman*, 223 Ark. 779, 782, 268 S.W.2d 614, 616 (1954). But their acts and omissions were negligent only in relation to those others toward whom Arkansas law obligated the crop dusters to use due care. *Hill*, 216 Ark. at 183, 224 S.W.2d at 800. Universal was not among that group.

The Arkansas Supreme Court has not adopted the recent RESTATEMENT (THIRD) OF TORTS's formulation that, with certain exceptions, everyone owes a duty of ordinary care to everyone else. RESTATEMENT (THIRD) OF TORTS §§ 6 & 7. Proof of "[n]egligence in the air . . . will [still] not do" in Arkansas. *Coca-Cola Bottling Co. of Memphis, Tennessee v. Gill*, 352 Ark. 240, 255, 100

S.W.3d 715, 724 (2003) (quoting *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 341, 162 N.E. 99, 99 (1928)). Universal's theory of negligence—a sort of reverse products liability, running from users back to manufacturers or makers—is simply foreign to Arkansas law.

**4. The Arkansas Deceptive Trade Practices Act?** Universal argues that the crop dusters violated the Arkansas Deceptive Trade Practices Act when they applied the 2,4-D Amine contrary to state and federal statutes and state regulations. *Document No. 1, ¶¶ 91–104.* The crop dusters' actions were, Universal argues, "unconscionable" within the meaning of the Act's catch-all prohibition, ARK. CODE ANN. § 4-88-107(a)(10). *Document No. 1, ¶¶ 93–94, 100–101.* Here the Court must make an "Erie-educated guess" about two unsettled issues under Arkansas law. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010).

The first murky issue is whether (aside from the Attorney General) only consumers may assert claims under the Act. The crop dusters' argument for this reading is not persuasive. The Act is primarily about protecting consumers. *E.g., Independence County v. Pfizer*, 534 F. Supp. 2d 882, 887 (E.D. Ark. 2008), *aff'd on other grounds sub nom., Ashley County, Ark. v. Pfizer, Inc.*, 552

F.3d 659 (8th Cir. 2009). But the Act's words allow any "person" aggrieved by a violation of the Act to sue. ARK. CODE ANN. § 4-88-113(f). The Court adopts the reasoning of *Electrocraft Arkansas, Inc. v. Super Electric Motors, Ltd*, No. 4:09-cv-318-SWW, 2009 WL 5181854, at *7 (E.D. Ark. 23 Dec. 2009), about why the Arkansas Supreme Court would allow claims by non-consumers like Universal.

Were the crop dusters' acts and omissions unconscionable, and thus actionable under ADTPA? No.

An unconscionable action, the Arkansas Supreme Court has said in considering the ADTPA, "affronts the sense of justice, decency, or reasonableness." *Baptist Health v. Murphy*, 365 Ark. 115, 128 n.6, 226 S.W.3d 800, 811 n.6 (2006) (citation & alteration omitted). In that case, for example, a hospital's economic-credentialing policy that disrupted doctor/patient relationships and decreased available hospital beds crossed the line. 365 Ark. at 128-29, 226 S.W.3d at 810-11. Unlike the hospital, the crop dusters did not misuse economic leverage to interfere with something as important and valuable as the choice of one's doctor.

Unconscionability has contractual bones. *Baptist Health* is about health-care relationships and contracts. Usury in contracts is unconscionable and actionable under the Act; it violates the Arkansas Constitution. *State ex rel. Bryant v. R & A Investment Co.*, 336 Ark. 289, 296-97, 985 S.W.2d 299, 303 (1999). As the Eighth Circuit said in a UCC case from Arkansas, an unconscionable contract is "one which no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other[.]" *Geldermann & Co. v. Lane Processing, Inc.*, 527 F.2d 571, 575 (8th Cir. 1975) (quotation omitted). The Act's provisions against specific deceptive and unconscionable trade practices—*e.g.*, no bait and switch advertising, no taking advantage of the infirm, no misrepresenting what charitable donations will be used for—make this plain. ARK. CODE ANN. § 4-88-107(a)(5), (7), & (8). Wrongful though they were, the crop dusters' actions were not matters of contract or conscience.

The crop dusters acted tortiously and illegally. But not every tort or violation of law is unconscionable or that word will lose its legal meaning. Universal's ADTPA claim fails as a matter of law because the Arkansas Supreme Court would not hold, this Court predicts, that the crop dusters'

actions affronted the sense of justice and decency guarded by the venerable notion of unconscionability.

**5. Implied Indemnity?** This claim fails as a matter of settled Arkansas law. Though the law sometimes implies an indemnity obligation, one created by contract is now the far more common variety. *See generally* Henry Woods, *Some Observations on Contribution and Indemnity*, 38 ARK. L. REV. 44, 61–71 (1984). Universal and the crop dusters made no contract about anything insofar as the record discloses. Nor do the facts alleged bring the case within any of the few situations where Arkansas law implies an indemnity obligation. *Elk Corp. of Arkansas v. Builders Transport, Inc.*, 862 F.2d 663, 666–67 (8th Cir. 1988) (Arkansas law) (Woods, J.). The parties were not joint tortfeasors, one "actively" negligent and one "passively" negligent, in the old phrasing; Universal is not a faultless principal subjected to liability by the crop dusters' faulty conduct as the companies' agent; and Universal is not a supplier held liable in warranty or strict liability for the crop dusters' defectively manufactured product. *Ibid.* Universal therefore has no viable claim against the crop dusters for indemnity implied by Arkansas law.

**6. RESTATEMENT (SECOND) OF TORTS § 914(2)?** This section states:

Expense of Litigation

(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.

(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

The unsettled question is whether the Arkansas Supreme Court would adopt and apply this section to these parties in these circumstances. *Blankenship*, 601 F.3d at 856. This Court holds that it would not.

First, a general point. This is an odd provision—it is embedded in the chapter about kinds of damages, RESTATEMENT (SECOND) OF TORTS §§ 901–932, but it leans toward creating a cause of action. Arkansas law is not known for its novelty; and adopting § 914(2) would be a bold and innovative step.

Second, and most importantly, the Supreme Court's handling of § 914(2) in two reported cases reveals that some initial interest in the section has faded to skepticism. Writing for a unanimous Court in *Liles v. Liles*, Justice Newbern quoted the section, noted its harmony with the rule in breach-of-warranty-title litigation, and then decided the fee issue on other grounds. 289 Ark. 159,

177-78, 711 S.W.2d 447, 456-57 (1986). The appellate briefs in the case[**] are silent about § 914(2). The sum of *Liles* is this: more than twenty-five years ago, the Supreme Court suggested on its own in *dictum* that the section was consistent with a slice of Arkansas law.

The only other time the Court has mentioned § 914(2) was in *Jean-Pierre v. Plantation Homes of Crittenden County, Inc.*, 350 Ark. 569, 577-78, 89 S.W.3d 337, 342-43 (2002). There the Circuit Court, after a default on a third-party complaint, had awarded attorney's fees as some of the damages against a tortfeasor. The Supreme Court unanimously reversed. Dr. Jean-Pierre, the third-party tortfeasor, stood precisely in the place the crop dusters stand in this thicket of litigation. The prevailing party tried to hang on to the fee award by citing *Liles* and § 914(2). The Supreme Court brushed that authority aside, reversing the fee award based on settled Arkansas law embodying the American Rule. 350 Ark. at 577-78, 89 S.W.3d at 342-43.

---

[**]When a reported decision is both isolated and murky, consulting the briefs behind it is an "acceptable technique" to use in figuring out exactly what was argued and decided. *U.S. v. Sithithongtham*, 192 F.3d 1119, 1123 (8th Cir. 1999) (Richard S. Arnold, J.).

The Arkansas Supreme Court found and mentioned § 914(2) in passing twenty-five years ago. In the only other case touching this RESTATEMENT section, the Court rejected it. That rejection came when a trial court had awarded fees against a third-party tortfeasor situated like the crop dusters here. Therefore, the Arkansas Supreme Court would not adopt § 914(2) and apply it to Universal and the crop dusters in this dispute. *Blankenship*, 601 F.3d at 856.

**7. The Third-Party-Litigation Exception?** Arkansas follows the American Rule: the victors in litigation are usually not entitled to recover attorney's fees incurred. *E.g., Jean-Pierre*, 350 Ark. at 577–78, 89 S.W.3d at 342; *Mountain Pure, LLC v. Bank of America, N.A.*, 481 F.3d 573, 576 (8th Cir. 2007); *see generally* HOWARD W. BRILL, ARKANSAS LAW OF DAMAGES § 11:1 (5th ed. 2004). This long-standing rule comes with settled exceptions—fees are made recoverable by some statues and some rules of law. *Mountain Pure, LLC*, 481 F.3d at 576. A 1994 case illustrates Arkansas law's strong current against fee awards. Until *Griffin v. First National Bank of Crossett*, 318 Ark. 848, 888 S.W.2d 306 (1994), parties could not even agree in their contracts that a reasonable attorney's fee would be awarded to the party who prevailed in any dispute.

Universal says the Arkansas Supreme Court would nonetheless follow other states and, if asked, adopt the third-party-litigation exception to the American Rule. The crop dusters' torts having propelled Universal into litigation with the cotton farmers, the fees incurred in that litigation should be recoverable. *E.g., OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 352–53 (8th Cir. 2007) (Minnesota law on the exception).

This Court disagrees. Universal's argument underestimates Arkansas law's parsimony about the availability of attorney's fees. And viewed in the larger legal context, the companies' claim is outlandish. If Universal had brought the crop dusters into the state litigation and prevailed against them, Universal could not have recovered its fees out of pocket. If the crop dusters had been the ones to sue Universal and had lost, Universal would not have been able to recover its attorney's fees. The Arkansas Supreme Court would not adopt what is essentially a new cause of action allowing recovery of fees in later litigation that were unavailable under settled law in the main suit.

\* \* \*

The crop dusters' motion to dismiss, *Document No. 26*, is granted. There is a loose end: one of the crop dusters, AAC Flying Service Inc., failed to join

in the motion, answer, or otherwise respond to the complaint. The Universal entities seek a default judgment. But Universal's claims against all the crop dusters are the same in their essentials and in their failings as a matter of law. A plaintiff may not, in these circumstances, take a default judgment against one defendant, thereby producing inconsistent judgments on identical claims. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872); *Angelo Iafrate Construction, LLC v. Potashnick Construction, Inc.*, 370 F.3d 715, 722 (8th Cir. 2004). The motion, *Document No. 41*, is denied. The Universal entities' complaint is dismissed without prejudice because it fails to state a legally sufficient claim of any kind.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

26 March 2012